Johnson, J.
There are a number of errors assigned,, only one of which will be considered ; that is, that the verdict of the jury is contrary to the charge of the court and the law, and unsupported by the evidence.
Unless it manifestly appears that such is the case, the judgment must stand.
The issue may be stated thus : Who was legally responsible to Hessberg for his pay for the services rendered?' Was he the agent of the company in such sense as made it liable for his services, or was he the sub-agent of Ricke, the company’s general agent for that territory?
After a careful examination of all the evidence, we are-clearly of opinion that the latter is the true state of the-case.
All the evidence is consistent with this view, and inconsistent with the other.
While it is not proposed to discuss in detail the proofs that support this conclusion, we may say that Hessberg’»’own testimony, and his letter in June, 1869, to the president of the company; his account-book with Ricke of the commissions charged to him, in which Ricke was credited with compensation received, in connection with the evidence of others, makes to our minds an unanswerable case,, showing that the claim he now makes that he could look to the company for the pay that Ricke had withheld, or for commissions on future renewals, was an afterthought, suggested after the default of Ricke, and after he left for parts-unknown, owing the plaintiff for these services.
In an additional argument, recently filed in behalf of defendant, it is alleged that the proof shows that Ricke’s defalcation to the company, some $3,000, was paid by his sureties, so that the company has no claim on the commissions on premiums and renewals thereafter to be collected that Carson & Bell succeeded Ricke as general agents for that territory, and have collected for the company, on the Hessberg business, $2,455 premiums and $13,659.13 on re *396 newals; that Ricke’s commissions on' these aggregated $1,515, which had been received and appropriated by. the •company, but was in law the property of Hessberg.
It is claimed that, admitting that Hessberg was only the local or sub-agent of Ricke, by whom he was to be paid, yet, as general agent, Ricke had power to employ such local ■agent, and pledge his own commissions, which the company were to pay him, to such local agent; that the contract shows he virtually did so, which operated as a lien on the ■premiums and renewals to the extent of such commissions, and substituted Hessberg as the real owner of said .$1,500, collected by Carson & Bell, to all the rights of Ricke.
The argument is, that this sum belonged to Ricke by virtue of his contract with the company, that he had pledged it to Hessberg as his agent, and now that the company had received it, Hessberg had a right to this action to recover the amount as his, under his contract with Ricke, •as so much had and received for his use.
This would be a recovery on a different ground than is stated in the petition. His reply denies that he was Ricke’s’ ■agent. Passing by this, however, it may be remarked that if it is true that these commissions collected by Carson & Bell were Ricke’s, as between him and his principals, under their contract, then the plaintiff’s right to recover them arises not from any contract between him and the company, but between him and Ricke, to which the company was-not a party, nor was it in any way bound. Ricke is not a party to this action. He would be a necessary party to determine the question thus presented.
All parties interested should be before the court, so its findings will bind Ricke as well as Hessberg. Its liability, if it exists, is to the former, to whom they are bound to pay this money in the absence of a defense.
Our decision does not, however-, rest on this ground. Ricke was acting under written authority or power of attorney. By it he could not “ contract any debt or liability ■of any kind, . . . without written authority.” He *397 was to employ his own sub-agents, and must report to the-company his agreements with them, and it reserved the option to keep out of his commissions enough to pay any or all local agents, or to require him' to pay them. The-proof shows the latter option was adopted, and that during his employment Hessberg looked to Ricke and not to the company for his compensation.
By this power of attorney, the company was to pay these-commissions “to John J. Ricke, . . . and in case of' his decease to his wife, and after her, to his children; ” and “ any assignment of them by him shall be null and void, unless approved in writing,” ... it being the express object of this agreement to secure such commissions to said John J. Ricke, his wife and children, and not .to any other' person.
It was also stipulated that Ricke would “ forfeit all rights., and moneys secured or payable under this contract,” if he - should act as agent for any other life insurance company.
We do not concede that, in the absence of the stipulations quoted, Ricke had power to pledge his future commissions, so as to create a lien or charge on them, before they accrued; yet it is very clear that, in view of these limitations, he could not do so. It would create a liability to • a stranger to the company without .its consent. He was forbidden to assign them. If he could not assign, how can he pledge, so as to substitute Hessberg in his place, as counsel claim?
If he became agent of another company he forfeited “ all rights or moneys secured or payable ” under his contract. What would then become of his pledge ? If he could thus transfer “ his rights and moneys ” to his local agents, the intent and purpose of this claim would be defeated. After-doing so, he could then become the agent of another company without fear of forfeiture.
Again, these commissions were payable to him during ■ his life, if the contract continued to that time, and at his death to his wife and children, and to no 'other person or *398 persons.' This also is utterly inconsistent with the power •claimed.
There is no particular hardship, as is claimed, in this result. The plaintiff was employed about six months. He ■claimed over $10,000 for his compensation for this period ! lie received $1,869, not a very inadequate sum as a salary for the time.
The judgment of the Superior Court is reversed and cause remanded.
Scott, Chief Judge, Day, Wright, and Ashburn, JJ., ■concurred.